UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXANDER N. JONES; KEN JONES; and JO ANNE JONES, | NO. CV-12-0188-EFS |
| Plaintiffs, | |
| v. | |
| THE STATE OF WASHINGTON; CHRISTINE O. GREGOIRE, in her official capacity as Governor of the State of Washington; GRANT COUNTY, WASHINGTON; LEROY C. ALLISON and "JANE DOE" ALLISON, his wife; TIM SNEAD and "JANE DOE" SNEAD, his wife; DEBORAH KAY MOORE and "JOHN DOE" MOORE, her husband; and DOUGLAS G. ANDERSON and KIRSTEN H. ANDERSON, his wife, | **ORDER GRANTING STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendants. | |

### I.    Introduction

This matter comes before the Court on Defendants Christine O. Gregoire and the State of Washington's (collectively, "State Defendants") Motion for Judgment on the Pleadings, ECF No. 17.  A hearing on the State Defendants' motion was held on August 7, 2012, in Richland.  ECF No. 37. George Ahrend and Garth Dano appeared on behalf of Plaintiffs.  William Clark appeared on behalf of the State Defendants, Jerry Moberg appeared on behalf of the County Defendants, and Douglas Anderson appeared on

behalf of himself and Mrs. Anderson.    After hearing the arguments of counsel, and reviewing the record in this matter and applicable authority, the Court was fully informed and granted the State Defendants' motion.    This Order serves to memorialize and supplement the Court's oral rulings.

**II.  Background[1]**

The Complaint in this matter alleges that on July 2, 2004, at twelve years of age, Plaintiff Alexander N. Jones (hereinafter "Mr. Jones") was charged with First Degree Child Molestation in the Juvenile Division of Grant County Superior Court, when in fact he was actually innocent of the crime.[2]

Grant County public defender Douglas Anderson was appointed to represent Mr. Jones.  Mr. Anderson had been under contract with Grant

---

[1]  This "background" section is based on the factual allegations contained in the Complaint, ECF No. 1.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  When ruling on a motion for judgment on the pleadings, the Court assumes to be true those portions of the Complaint that "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," but does not afford the presumption of truth to allegations that "simply recite the elements of a cause of action."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[2]  For a more detailed discussion of the background behind this case, see *State v. A.N.J.*, 168 Wn.2d 91, 99-106 (2010).

ORDER ~ 2

County to provide legal defense services in the Juvenile Division of Grant County Superior Court in December of 2000 and, pursuant to that contract, would be appointed by judges of the Grant County Superior Court to represent minor defendants who could not afford to hire their own attorney. The contract between Mr. Anderson and Grant County provided for the payment of a fixed fee to Mr. Anderson, which did not vary based on the quantity or quality of representation Mr. Anderson provided. The contract also provided that Mr. Anderson would cover the cost of investigators and expert witnesses using the fixed fee, effectively requiring him to take a deduction in his personal income in order to retain an investigator or expert on a client's behalf. The contract provided no meaningful limits on the amount of work Mr. Anderson could perform, nor did it provide means by which he would be supervised or held accountable. The County Defendants were aware of the problems with this type of public defense contract 1) from various studies and reports, *see* Complaint, ECF No. 2 ¶¶ 34 & 35, and 2) because the County's own attorneys prosecuted the criminal cases to which Mr. Anderson was appointed.

Mr. Jones had no communication with Mr. Anderson before his July 19, 2004 first appearance. Mr. Anderson was not present at this first appearance, and Mr. Jones' arraignment was continued until August 2, 2004. Mr. Anderson met with Mr. Jones and his father one time between the first appearance and the arraignment, for only five minutes, at which time Mr. Jones denied the charges against him. On the date of his arraignment, Mr. Jones and his parents met with Mr. Anderson for no more than ten minutes, during which time Mr. Anderson received no information

1  suggesting Mr. Jones was guilty.  Mr. Jones presumably entered a plea of
2  not guilty, and pretrial conference and trial dates were set.

3      Mr. Jones' father attempted to telephone Mr. Anderson several times
4  during the period between the August 2, 2004 arraignment and the
5  September 14, 2004 pretrial conference, but Mr. Anderson did not answer
6  his office telephone or return the messages that Mr. Jones' father left.
7  Mr. Anderson did not substantively communicate with Mr. Jones or either
8  of his parents before, during, or immediately after the September 14,
9  2004 pretrial conference.  Mr. Jones' trial was scheduled to begin on
10 September 22, 2004, just seven days later.

11     On September 15, 2004, Mr. Anderson received a proposed plea
12 agreement from the Grant County Prosecutor.  On September 17, 2004, Mr.
13 Anderson met with Mr. Jones and his parents to discuss the plea
14 agreement.  Mr. Anderson did not review the police reports with Mr. Jones
15 or his parents, did not have a copy of the proposed plea agreement, and
16 did not inform Mr. Jones or his parents of the nature of the charges
17 against him.  Mr. Anderson told Mr. Jones' parents that the proposed plea
18 agreement was a good "deal," and gave them incomplete and inaccurate
19 information about the nature and consequences of the plea.  The entire
20 meeting lasted no more than ten minutes.

21     On September 22, 2004, the date the matter was set for trial, Mr.
22 Anderson was not prepared.  He had not discussed the proposed plea
23 agreement with Mr. Jones or his parents since their September 17 meeting,
24 and there was a room full of other defendants waiting to see him.  Mr.
25 Anderson provided Mr. Jones and his parents a copy of the proposed plea
26 agreement for the first time, and after a five minute discussion, told

Mr. Jones to sign the plea agreement.  Mr. Anderson also told Mr. Jones
to tell the Judge he had read the agreement, even though he had not.  The
Judge accepted Mr. Jones' plea of guilty after a short colloquy.

Soon after Mr. Jones entered his guilty plea, Mr. Jones' parents
learned that they were given inaccurate and incomplete information from
Mr. Anderson, and they retained private counsel to assist Mr. Jones in
withdrawing his guilty plea.  After a hearing in Grant County Superior
Court and an appeal to Division III of the Washington State Court of
Appeals, the Washington Supreme Court granted Mr. Jones' appeal and
remanded the matter to permit Mr. Jones to withdraw his plea.  *See State
v. A.N.J.*, 168 Wn.2d 91 (2010).  On remand, Mr. Jones withdrew his guilty
plea, and the Grant County Prosecutor's Office dismissed the charges
against him.

Mr. Jones and his parents filed this lawsuit in Chelan County
Superior Court on March 5, 2012, alleging claims against Mr. Anderson,
Grant County, select Grant County Commissioners, Governor Christine
Gregoire, and the State of Washington.  ECF No. 2.  The Complaint asserts
two claims for a declaratory judgment under RCW 7.24.010 and 7.24.050;
a claim for violation of Mr. Jones' rights under Article I, § 22 of the
Washington Constitution; separate § 1983 claims against Mr. Anderson, the
County Defendants, and Governor Gregoire; claims for professional
negligence and breach of fiduciary duty against Mr. Anderson; claims for
negligence and "concerted action" against the County Defendants; a claim
for community liability against the spouses of all individual Defendants;
and a claim for tortious injury to a child against all Defendants.
Defendants removed the matter to this Court on April 4, 2012.  ECF No.

1 . On June 26, 2012, the State Defendants filed the instant motion for
2 judgment on the pleadings.   ECF No. 17.[3]

3 **III. Discussion**

4     **A.  Legal Standard**

5     The State Defendants bring their motion pursuant to Federal Rule of
6 Civil Procedure 12(c), which permits a party to move for judgment on the
7 pleadings any time after the pleadings are closed.   Fed. R. Civ. P.
8 12(c).  "Judgment on the pleadings is properly granted when, accepting
9 all factual allegations in the complaint as true, there is no issue of
10 material fact in dispute, and the moving party is entitled to judgment
11 as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th
12 Cir. 2012) (internal quotation omitted).  "Analysis under Rule 12(c) is
13 substantially identical to analysis under Rule 12(b)(6) because, under
14 both rules, a court must determine whether the facts alleged in the
15 complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.*
16 (internal quotation omitted).   Accordingly, the Court must determine
17 whether the Complaint "contain[s] sufficient factual matter, accepted as
18 true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,
19 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

20     **B.  Analysis**

21     The State Defendants move for judgment on the pleadings with regard
22 to each claim Plaintiffs asserted against them: the first and second

---

24     [3] Defendants Grant County, Leroy and Jane Doe Allison, Tim and Jane
25 Doe Snead, and Deborah and John Doe Moore (collectively, "County
26 Defendants") have also filed a Motion for Judgment on the Pleadings,
which is noted for hearing on August 30, 2012.  ECF No. 20.

(declaratory judgment claims), third (state constitutional claim), fourth (§ 1983 claim against Governor Gregoire), and thirteenth (tortious injury to child claim).   In response, Plaintiffs abandon their § 1983 claim against Governor Gregoire, but oppose the remainder of the State Defendants' motion.   *See* Response, ECF No. 29 at 1.[4]   Accordingly, the Court analyzes the State Defendants' motion with regard to each remaining claim in the order the parties have briefed them; because Plaintiffs' first and second claims for declaratory relief implicate the same legal issue, the Court analyzes them together.

### i.   Washington State Constitutional Claim

Plaintiffs' third claim for relief is for violation of Mr. Jones' right to the effective assistance of counsel under the Washington Constitution.   Article I, § 22 of the Washington Constitution provides in pertinent part that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . . ."   Wash. Const. Art. I, § 22.   Plaintiffs claim that all Defendants violated this

---

[4] The State Defendants assert in their reply that Plaintiffs have abandoned all claims for equitable relief, but that does not appear to be the case.   Plaintiffs' response asks "the Court to deny the State's motion for judgment on the pleadings (ECF #18) [sic] insofar as it relates to their First and Second Claims for Declaratory Judgment, their Third Claim for Violation of Washington Constitution Art. I, § 22, their Thirteenth Claim for Injury to Child, and related requests for damages."   Response, ECF No. 29 at 1.   Because Plaintiffs' first and second claims seek *only* a declaratory judgment, Plaintiffs do not appear to have abandoned all claims for equitable relief.

ORDER ~ 7

section by depriving Mr. Jones of the effective assistance of counsel, and seek money damages as well as declaratory and injunctive relief.  The Court analyzes each class of relief sought separately.

### a.   Money Damages

The State Defendants argue that Plaintiffs' claim for money damages must be dismissed because, as a general rule, Washington courts do not recognize state constitutional claims for money damages.  In response, Plaintiffs assert that Washington courts have recognized a cause of action under the takings clause of the Washington State Constitution, and argue that the question of whether the state Constitution provides a cause of action for ineffective assistance of counsel is an open one.

The Washington Supreme Court most recently touched upon this issue in *Reid v. Pierce County*, 136 Wn.2d 195 (1998).  The plaintiff in *Reid* alleged that employees of the Pierce County Medical Examiner's Office wrongfully appropriated and shared autopsy photographs of her deceased aunt, former Governor Dixie Lee Ray.  *Reid*, 136 Wn.2d at 198.  She asserted claims, among others, for the common law tort of invasion of privacy and for violation of her right to privacy under the Washington Constitution.  *Id.* at 199.  The trial court granted the County's motion to dismiss under Washington Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted.  *Id.*  In an appeal consolidated with several other matters, the Washington Supreme Court reversed and remanded with regard to the plaintiff's common law invasion of privacy claim, stating that "we explicitly hold the common law right of privacy exists in this state and that individuals may bring a cause of action for invasion of that right."  *Id.* at 206.  The Court declined to recognize

a civil cause of action for the plaintiff's state constitutional claim, however, finding that "Plaintiffs may obtain adequate relief under the common law and that such actions are better addressed under the common law invasion of privacy action . . . Because we hold Plaintiffs are entitled to maintain an action for invasion of privacy under the common law, we decline to reach this issue in this case." *Id.* at 213-14.

More recently, in *Blinka v. Washington State Bar Association*, 109 Wn. App. 575 (2001), Division 1 of the Washington Court of Appeals rejected a plaintiff's argument that it should recognize a civil damages action based on Article I, § 5 of the state Constitution, Washington's freedom of speech provision. Upholding the trial court's dismissal of the claim at the summary judgment stage, the court noted that "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation.'" *Blinka*, 109 Wn. App. at 591 (quoting *Sys. Amusement, Inc. v. State*, 7 Wn. App. 516, 517 (1972)). The court reasoned that it would be inappropriate to judicially create a civil cause of action for state constitutional violations when the Washington legislature has not provided the state's courts with "legislative guidance" in the form of an analogue to 42 U.S.C. § 1983, which establishes a civil cause of action for violations of the United States Constitution by those acting under color of state law. *Id.*

Plaintiffs make much of the Washington Supreme Court's reasoning in *Reid* that creation of a state constitutional action was unnecessary because the plaintiff could obtain "adequate relief" under another cause of action, arguing that the cause of action they urge is the only

adequate form of relief to rectify violations of the state Constitution's right to counsel. Plaintiffs cite a number of reasons why a damages action for violations of Article I, § 22 should be created, but these arguments are simply inapposite before a federal district court; the Court's duty is to apply state law as the state's Supreme Court would at the time. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) ("When interpreting state law, federal courts are bound by the decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue." (citing *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1357, 1545 (9th Cir. 1996)). And the Washington Supreme Court has simply not indicated any willingness to recognize a civil cause of action for state constitutional violations, declining to reach the issue in *Reid* and denying review of the Washington Court of Appeals' general statement in *Blinka*. *See Blinka v. Wash. State Bar Ass'n*, 146 Wn.2d 1021 (2002) (denying review). This reading of *Reid* and *Blinka* is consistent with that of other federal courts that have recently addressed this issue. *See, e.g., Sneller v. City of Bainbridge Island*, 606 F.3d 636, 641 n.1 (9th Cir. 2010) (Tallman, J., dissenting) (noting that the plaintiffs' "claim for violation of the Washington Constitution has not been a colorable theory in Washington for decades" (citation omitted)); *Estate of Wasilchen v. Gohrman*, No. C11-0749JLR, 2012 WL 1432201 at *1 (W.D. Wash. April 25, 2012) ("Plaintiffs' counsel conceded during oral argument that Plaintiffs' claims under the Washington State Constitution should be dismissed because there is no private cause of action for damages for the alleged violations of the Washington State Constitution." (citing

1  *Reid*, 136 Wn.2d at 195; *Blinka*, 109 Wn. App. at 591)); *Quantz v. Edwards*,

2  No. C04-5737RJB, 2005 WL 3500838 at *16 (W.D. Wash. Dec. 21, 2005)

3  ("There is no state statute comparable to Section 1983 entitling

4  plaintiffs to damages for violations of rights arising under the

5  Washington State Constitution." (citing *Blinka*, 109 Wn. App. at 591)).

6      Finally, to the extent the Washington Supreme Court's statement in

7  *Reid* could be construed as actually setting forth the state's analytical

8  framework for determining whether to create constitutional causes of

9  action, it would still not be appropriate to do so here.  Mr. Jones'

10  injury was remedied in part by the Washington Supreme Court's decision

11  in *State v. A.N.J.*  Furthermore, Plaintiffs may also have an adequate

12  form of relief in their common law professional negligence claim against

13  Mr. Anderson, and in their § 1983 claim for violation of Mr. Jones' Sixth

14  and Fourteenth Amendment rights to the assistance of counsel against

15  other Defendants.[5]

16      For these reasons, as well as those stated on the record, the Court

17  finds that Washington courts do not currently recognize a civil damages

18

19

---

20    [5] Plaintiffs also assert a § 1983 claim against Mr. Anderson, but

21  this does not appear to be a viable claim.  *See Miranda v. Clark Cnty.,*

22  *Nev.*, 319 F.3d 465, 468 (9th Cir. 2003) (recognizing that, under *Polk*

23  *County v. Dodson*, 454 U.S. 312 (1981), public defenders are not subject

24  to § 1983 claims because they are not "state actors").  In light of this

25  rule, the Court requires Plaintiffs to file and serve a notice stating

26  whether they intend to pursue this claim.

ORDER ~ 11

1  action for the violation of Article I, § 22 of the Washington
2  Constitution, and grants the State Defendants' motion in this regard.

3  **b.   Equitable Relief**

4  The State Defendants argue that the aspect of Plaintiffs' Article
5  I, § 22 claim that seeks declaratory and injunctive relief is not
6  justiciable.  Specifically, the State Defendants argue that Plaintiffs
7  lack standing to bring their claim for equitable relief, that Plaintiffs'
8  claim for equitable relief is moot, and alternatively, that Plaintiffs
9  have not alleged the "irreparable harm" required for injunctive relief.
10  Plaintiffs do not directly address the State Defendants' arguments.

11  Under modern federal jurisprudence, "[t]o seek injunctive relief,
12  a plaintiff must show that he is under threat of suffering 'injury in
13  fact' that is concrete and particularized; the threat must be actual and
14  imminent, not conjectural or hypothetical; it must be fairly traceable
15  to the challenged action of the defendant; and it must be likely that a
16  favorable judicial decision will prevent or redress the injury." *Summers*
17  *v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Friends of the*
18  *Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)).
19  Standing is a federal justiciability requirement that must be met to
20  invoke federal jurisdiction even with regard to state law claims.
21  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985).  Plaintiffs
22  bear the burden of demonstrating standing for each form of relief they
23  seek.  *Summers*, 555 U.S. at 493.

24  Here, the Complaint includes no allegation that Mr. Jones or his
25  parents are under an "actual and imminent" threat of future injury;
26  rather, they seek redress for wholly past injuries.  Because federal

courts do not permit parties to sue for injunctive relief based on wholly past injuries, the Court finds that Plaintiffs do not have Article III standing to bring their claim for equitable relief under the Washington Constitution, and grants the State Defendants' motion in this regard. The Court does not reach the State Defendants' arguments concerning mootness and irreparable injury.

### ii.  Declaratory Judgment Claims

Plaintiffs' first and second claims seek a declaratory judgment that 1) the Washington Supreme Court's ruling in *State v. A.N.J.* has preclusive effect in this case, and 2) Article I, § 22 provides criminal defendants stronger protection than the Sixth Amendment right to counsel. Plaintiffs bring their claims under Washington's adoption of the Uniform Declaratory Judgments Act, RCW 7.24.010 *et seq.* (UDJA).

The State Defendants argue that this claim is non-justiciable for the same reasons as Plaintiffs' state constitutional claim, namely standing and mootness.  The State Defendants couch their arguments in terms of the UDJA's requirements, which incorporate "the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement." *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411 (2001).  "[U]nder the [UDJA], the requirement of standing tends to overlap justiciability requirements." *Id.* at 411 n.5 (quoting *Amalg. Transit Union Local 587 v. State*, 142 Wn.2d 183, 203 (2000)).

Plaintiffs do not address the State Defendants' argument that they lack standing to seek declaratory relief based on Mr. Jones' wholly-past injury, but rather devote significant briefing to an analysis of the six

factors in *State v. Gunwall*, 106 Wn.2d 54 (1986), which the Washington Supreme Court employ in determining whether a state constitutional provision should be analyzed separately from its federal counterpart. In the alternative, Plaintiffs urge the Court to certify this issue to the Washington Supreme Court.

As noted above in Section III.B.i.b., Plaintiffs do not have Article III standing to seek equitable relief for their wholly-past injuries. Furthermore, for the reasons discussed in Section III.B.i.a., it would be inappropriate for a federal district court to engage in a *de novo* analysis of a state constitutional provision, especially when a state appellate court has already decided the issue differently. *See State v. Medlock*, 86 Wn. App. 89, 97-99, *rev. denied*, 133 Wn.2d 1012 (1997) (performing *Gunwall* analysis and concluding that "there is no basis to conclude Const. art. I, § 22 (amend.10) should be interpreted so as to provide more protection than the Sixth Amendment."); *see also Vestar Dev. II, LLC*, 249 F.3d at 960 ("[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." (citing *Lewis*, 87 F.3d at 1545)).

Plaintiffs argue that *Medlock* is distinguishable on the basis that it involved the right to counsel in a pretrial interrogation, and thus implicated the Fifth Amendment "investigative" right to counsel, not the Sixth Amendment. But the court in *Medlock* clearly stated that "Mr. Medlock's Sixth Amendment right to counsel had attached at the time of his interrogation by the Spokane police," and it analyzed the plaintiff's claim under the Sixth Amendment. *Medlock*, 86 Wn. App. at 99-100.

1    Plaintiffs also argue that the *Gunwall* analysis in *Medlock* is "incomplete

2    and incorrect," Response, ECF No. 29 at 19, which the Court rejects for

3    the reasons given above.

4        Accordingly, the Court grants the State Defendants' motion in this

5    regard and dismisses Plaintiffs' first and second claims.

6                    **iii. Tortious Injury to Child Claim**

7        Plaintiffs Ken and Jo Anne Jones have also asserted a damages claim

8    for tortious injury to a child under RCW 4.24.010.  RCW 4.24.010 provides

9    a cause of action for a mother or father to "recover damages for medical,

10   hospital, medication expenses, and loss of services and support, [as well

11   as] damages [] for the loss of love and companionship of the child and

12   for injury to or destruction of the parent-child relationship in such

13   amount as, under all the circumstances of the case, may be just."  RCW

14   4.24.010.

15       The State Defendants argue that Plaintiffs' tortious injury to child

16   claim must fail because it only imposes derivative liability, i.e., it

17   must be predicated on the tortfeasor's actual liability to the child.

18   Plaintiffs concede this, stating that they "agree with the State's

19   argument that parents' claims for injury to their child . . . rise or

20   fall with the claims of their child."  Response, ECF No. 29 at 20 n.3.

21       For the reasons discussed above, the Court finds that the State

22   Defendants are not liable to Mr. Jones, and dismisses Plaintiffs' RCW

23   4.24.010 claim on this basis.  However, because Plaintiffs asserted their

24   RCW 4.24.010 claim against all Defendants, and they may be able to

25   demonstrate that the other Defendants are liable to Mr. Jones, the Court

26   dismisses this claim *only* with regard to the State Defendants.

**IV.   Conclusion**

For the reasons discussed above and on the record, the Court finds that 1) Plaintiffs' claim for money damages under Article I, § 22 is not cognizable under Washington law, 2) Plaintiffs lack standing to bring their claims for equitable relief under Article I, § 22 and the UDJA, and 3) Plaintiffs' RCW 4.24.010 claim against the State Defendants fails as a matter of law.   The Court dismisses Plaintiffs' first, second, third, and fourth claims, and dismisses Plaintiffs' thirteenth claim with regard to the State Defendants only.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The State Defendants' Motion for Judgment on the Pleadings, **ECF No. 17**, is **GRANTED**.

2.   The caption in this case is **AMENDED**.   All future filings in this matter shall bear the following caption:

ALEXANDER N. JONES; KEN JONES; and JO ANNE JONES,

Plaintiffs,

v.

GRANT COUNTY, WASHINGTON; LEROY C. ALLISON and "JANE DOE" ALLISON, his wife; TIM SNEAD and "JANE DOE" SNEAD, his wife; DEBORAH KAY MOORE and "JOHN DOE" MOORE, her husband; and DOUGLAS G. ANDERSON and KIRSTEN H. ANDERSON, his wife,

Defendants.

///

//

/

ORDER ~ 16

1    3.   Plaintiffs shall file and serve a notice stating whether they
2  intend to pursue their § 1983 claim against Mr. Anderson within **fourteen**
3  **(14) days** of the entry of this Order.

4    **IT IS SO ORDERED.** The District Court Executive is directed to enter
5  this Order and distribute copies to counsel.

6    **DATED** this ____8th____ day of August 2012.

7

8                        s/ Edward F. Shea
                        EDWARD F. SHEA
9            Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  Q:\EFS\Civil\2012\188.mjp.lc2.wpd


ORDER ~ 17