UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALEXANDER N. JONES; KEN JONES;
and JO ANNE JONES,

             Plaintiffs,

      v.

GRANT COUNTY, WASHINGTON; LEROY
C. ALLISON and "JANE DOE"
ALLISON, his wife; TIM SNEAD and
"JANE DOE" SNEAD, his wife;
DEBORAH KAY MOORE and "JOHN DOE"
MOORE, her husband; and DOUGLAS
G. ANDERSON and KIRSTEN H.
ANDERSON, his wife,

             Defendants.

NO. CV-12-0188-EFS

**ORDER GRANTING IN PART AND
DENYING IN PART THE COUNTY
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS**

## I.  Introduction

This matter comes before the Court on Defendants Leroy Allison, Tim
Snead, Deborah Kay Moore (the "County Commissioners"), their respective
spouses, and Grant County's (collectively, the "County Defendants")
motion for judgment on the pleadings, ECF No. 20.[1]  The County Defendants

---

[1] The County Defendants originally captioned their motion as a
Motion for Judgment on the Pleadings or in the Alternative Motion for
Summary Judgment; however, the County Defendants have since conceded that
summary judgment is premature, and they withdraw that portion of their

1  ask the Court to enter judgment with respect to six of the nine claims

2  asserted against them.[2]   Plaintiffs Alexander, Ken, and Jo Anne Jones

3  oppose the motion.  Resp. Mem., ECF No. 40.

4      On August 30, 2012, the Court heard argument on the motion.  Jerry

5  Moberg appeared on behalf of the County Defendants; Garth Dano and George

6  Arend appeared on Plaintiffs's behalf.  Defendant Douglas Anderson,

7  although having filed no pleading supporting or opposing the motion, also

8  appeared *pro se*.  Having considered the pleadings filed in this matter,

9  the authorities cited therein, and the parties' arguments at the hearing,

10 the Court is fully informed.  For the reasons set forth below, the Court

11 grants in part and denies in part the County Defendants' motion for

12 judgment on the pleadings.

13 //

14 //

15 //

16 //

17 //

18 //

19 _____

20 motion.  Reply Mem., ECF No. 43, at 10-11.

21      [2] Although the County Defendants do not specify in their opening

22 memorandum the claims upon which they seek judgment, they clarify in

23 their reply memorandum that they only seek judgment on the First, Second,

24 Third, Fifth, Seventh, and Thirteen Claims; accordingly, the Court deems

25 the County Defendants' motion withdrawn as to the Tenth, Eleventh, and

26 Twelfth Claims.

ORDER ~ 2

## II.   Background

**A.   Factual History[3]**

On July 2, 2004, at twelve years of age, Plaintiff Alex Jones -- the son of Plaintiffs Ken and Jo Anne Jones -- was charged with First Degree Child Molestation in the Juvenile Division of Grant County Superior Court.[4]  Grant County public defender Douglas Anderson, an independent contractor, was appointed to represent Alex.  Mr. Anderson had been under contract with Grant County to provide legal defense services in the Juvenile Division of Grant County Superior Court since December 2000. Pursuant to that contract, he was appointed by judges of the Grant County Superior Court to represent minor defendants who could not afford to hire

---

[3]  The facts set forth herein mirror the factual allegations contained in the Complaint, ECF No. 2, at 7-21.  In evaluating a motion for judgment on the pleadings, the Court must assume to be true those portions of the Complaint that "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," but should not afford the presumption of truth to allegations that "simply recite the elements of a cause of action[.]"  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[4]  Because all three Plaintiffs share a common surname (Jones), to avoid confusion, the Court refers to Plaintiffs Ken and Jo Anne Jones as Mr. and Mrs. Jones, respectively, and to Plaintiff Alexander Jones as Alex, which is the given name he uses in the Complaint.  The Court intends no disrespect.

ORDER ~ 3

1   their own attorney.  The contract between Mr. Anderson and Grant County
2   provided for the payment of a fixed fee to Mr. Anderson, which did not
3   vary based on the quantity or quality of representation he provided.  The
4   contract also required Mr. Anderson to cover the cost of investigators
5   and expert witnesses using the fixed fee, effectively forcing him to take
6   a reduction in his personal income in order to retain an investigator or
7   expert on a client's behalf.  The contract provided no requirements or
8   meaningful limits as to the amount of work Mr. Anderson could perform,
9   nor did it provide means by which he would be supervised or held
10  accountable.  The County Defendants were aware that representation could
11  be deficient under this type of public defense contract, based on
12  information in various studies and reports and because Grant County's own
13  attorneys prosecuted cases to which Mr. Anderson was appointed and were
14  therefore familiar with the quality of representation being provided.

15      Alex had no communication with Mr. Anderson before his first court
16  appearance on July 19, 2004.  Mr. Anderson was not present at this
17  initial appearance, and Alex's arraignment was continued until August 2,
18  2004.  Mr. Anderson met with Alex and Mr. Jones only once between the
19  first appearance and the arraignment, for only five minutes, at which
20  time Alex denied the charges against him.  On the date of his
21  arraignment, Alex and his parents met with Mr. Anderson for no more than
22  ten minutes, during which Mr. Anderson received no information suggesting
23  Alex was guilty.  Alex entered a plea of not guilty, and pretrial
24  conference and trial dates were set.

25      Mr. Jones attempted to telephone Mr. Anderson several times between
26  the August 2, 2004 arraignment and the September 14, 2004 pretrial

conference, but Mr. Anderson did not answer his office telephone or return the messages left by Mr. Jones. Mr. Anderson did not substantively communicate with Alex or his parents before, during, or immediately after the September 14, 2004 pretrial conference. Alex's trial was scheduled to begin on September 22, 2004, just seven days later.

On September 15, 2004, Mr. Anderson received a proposed plea agreement from the Grant County Prosecutor's Office. On September 17, 2004, Mr. Anderson met with the Jones family to discuss the plea agreement. Mr. Anderson did not review the police reports with Alex or Alex's parents; additionally, he did not have a copy of the proposed plea agreement, and he did not inform the Jones family of the nature of the charges against Alex. Mr. Anderson told Mr. and Mrs. Jones that the proposed plea agreement was a "good deal" and gave them incomplete and inaccurate information about the nature and consequences of the plea. The entire meeting lasted no more than ten minutes.

On September 22, 2004, the date the matter was set for trial, Mr. Anderson was not prepared. He had not discussed the proposed plea agreement with the Jones family since their September 17 meeting, and there was a room full of other defendants waiting to see him. Mr. Anderson provided Alex and his parents with a copy of the proposed plea agreement for the first time and, after a five minute discussion, told Alex to sign the plea agreement. Mr. Anderson also told Alex to tell the judge he had read the agreement, even though he had not. The judge accepted Alex's guilty plea after a short colloquy.

//

1    Soon after Alex pled guilty, Mr. and Mrs. Jones learned that they
2 were given inaccurate and incomplete information from Mr. Anderson, and
3 they retained private counsel to assist Alex in withdrawing his guilty
4 plea.  After a hearing in Grant County Superior Court and an appeal to
5 the Washington State Court of Appeals, the Washington Supreme Court
6 granted review and remanded the matter to permit Alex to withdraw his
7 guilty plea.  *See State v. A.N.J.*, 225 P.3d 956, 959 (Wash. 2010).  On
8 remand, Alex withdrew his guilty plea, and the Grant County Prosecutor's
9 Office dismissed the charges against him.

10 **B.   Procedural History**

11    Plaintiffs filed this action in Chelan County Superior Court on
12 March 5, 2012, alleging claims against the State of Washington and
13 Governor Christine O. Gregoire (collectively, the "State Defendants"),
14 the County Defendants, and Douglas and Kirsten Anderson, ECF No. 2, at
15 7-21.  The Complaint asserts the following claims for relief:

16    (a)  two claims against all Defendants for declaratory judgment,
17         pursuant to RCW 7.24.010 and 7.24.050 (First and Second
18         Claims);

19    (b)  a claim against all Defendants for violating Mr. Jones's rights
20         under Article I, section 22 of the Washington Constitution
21         (Third Claim);

22    (c)  one claim each against Defendants Gregoire, the County
23         Commissioners, Douglas Anderson, and Grant County, pursuant to
24         42 U.S.C. § 1983, for violating Mr. Jones's Sixth Amendment
25         right to effective assistance of counsel (Fourth, Fifth, Sixth,
26         and Seventh Claims, respectively);

(d)  two additional claims against Defendant Douglas Anderson, one for professional negligence (Eighth Claim), and one for breach of fiduciary duty (Ninth Claim);

(e)  one claim against Defendants Grant County and the County Commissioners for negligent hiring, supervision, and retention (Tenth Claim);

(f)  one claim against the County Commissioners and Defendant Douglas Anderson for "concerted action," or civil conspiracy (Eleventh Claim);

(g)  one claim against the spouses of the County Commissioners for community liability (Twelfth Claim); and

(h)  one claim against all Defendants for injury to child, pursuant to RCW 4.24.010 (Thirteenth Claim).

Defendants removed the case to this Court on May 4, 2012. ECF No. 1.

On June 26, 2012, the State Defendants moved for judgment on the pleadings. ECF No. 17. On August 8, 2012, the Court granted the State Defendants' motion and dismissed all claims against the State Defendants.[5] ECF No. 41. The Court found that Plaintiffs lacked standing to pursue the First and Second Claims against the State

_____

[5] To the extent the Court's prior August 8, 2012 Order granting the State Defendants' motion for judgment on the pleadings, ECF No. 41, may be construed as dismissing the First, Second, and Third Claim against all Defendants, the Court clarifies that its prior Order dismissed those claims with respect to the State Defendants only.

Defendants because those claims sought equitable relief for past injuries. *Id.* at 13-15.   As to the Third Claim, which sought both equitable and monetary relief, the Court found that Plaintiffs lacked standing to seek equitable relief and that Washington does not allow monetary damages for violations of article I, section 22 of the Washington Constitution.   *Id.* at 8-13.   The Court concluded that Plaintiffs abandoned their Fourth Claim. *Id.* at 7. And finally, because a parent's injury-to-child claim must be predicated on the tortfeasor's liability to the child for an injury, and because the Court had dismissed all of Alex's potential "predicate" claims against the State Defendants, the Court dismissed Mr. and Mrs. Jones' Thirteenth Claim for injury-to-child.   Because Plaintiffs asserted no other claims against the State Defendants, the Court terminated the State Defendants as parties to this action.

### III.  Discussion

**A.   Legal Standard**

The County Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(c), which permits a party to move for judgment on the pleadings once the pleadings are closed.   Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."   *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation omitted).   "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the

1   complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.*

2   (internal quotation omitted).    Accordingly, the Court must determine

3   whether the Complaint "contain[s] sufficient factual matter, accepted as

4   true, to 'state a claim to relief that is plausible on its face.'"

5   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl.*

6   *Corp.*, 550 U.S. 544, 570 (2007)).

7   **B.   Analysis**

8        The Court has already dismissed the First, Second, and Third Claims

9   with respect to the State Defendants, and the County Defendants now seek

10  identical relief for identical reasons. *See* Reply Mem., ECF No. 43, at

11  2.   As to the Fifth and Seventh Claims -- asserted against the County

12  Commissioners and Grant County, respectively -- the County Defendants

13  seek judgment on the ground that they are not liable under 42 U.S.C. §

14  1983 because Mr. Anderson was not a state actor when he represented Alex.

15  Finally, as to the Thirteenth Claim, the County Defendants argue that Mr.

16  and Mrs. Jones cannot recover under Washington's injury-to-child statute

17  for the County Defendants' alleged violation of Alex's constitutional

18  rights because a constitutional violation is not an "injury" within the

19  meaning of the statute.   The Court addresses these arguments in turn.

20       **1.   First, Second, and Third Claims**

21       The Court has previously dismissed the First, Second, and Third

22  Claims with respect to the State Defendants. *See supra* Part II.B; *see*

23  *also* ECF No. 41, at 7-15.   Plaintiffs adduce no new arguments for why the

24  Court's prior decision dismissing these claims against the State

25  Defendants should not be extended to the County Defendants. *See* Resp.

26  Mem., ECF No. 40, at 2 ("[I]n light of the Court's ruling [dismissing

1   claims against the State Defendants], Plaintiffs do not want to submit

2   duplicative briefing on the same claims.    Nonetheless, Plaintiffs do not

3   intend to abandon these claims . . . [and] incorporate by reference their

4   argument regarding these claims [that was offered against the State

5   Defendants.]").    The Court therefore incorporates by reference its prior

6   August 7, 2012 Order, ECF No. 41, and finds Plaintiffs lack standing to

7   pursue these claims against the County Defendants.

8        The First and Second Claims exclusively seek declaratory judgment

9   as a remedy.    Declaratory judgment is "essentially an equitable cause of

10  action," which the Court may "grant or withhold . . . on the basis of

11  traditional equitable principles." *Samuels v. Mackell*, 401 U.S. 66, 70

12  (1971).    As the Court has previously concluded, ECF No. 41, at 12-15,

13  Plaintiffs lack standing to seek equitable relief for wholly-past

14  injuries.    *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (concluding

15  that the "basic requisites of the issuance of equitable relief" are "the

16  likelihood of substantial and immediate irreparable injury, and the

17  inadequacy of remedies at law").    Moreover, Washington's Uniform

18  Declaratory Judgments Act (UDJA), RCW Chapter 7.24 -- under which

19  Plaintiffs purport to seek declaratory relief -- authorizes the Court to

20  refuse declaratory judgment "where such judgment . . . if rendered or

21  entered, would not terminate the uncertainty or controversy giving rise

22  to the proceeding." RCW 7.24.060. Here, granting Plaintiffs declaratory

23  judgment would not resolve the underlying dispute, as the Court must

24  still adjudicate the parties' remaining claims; therefore, declaratory

25  judgment is not warranted.

26  //

The Third Claim seeks declaratory and injunctive relief, as well as monetary damages, for the County Defendants' alleged violations of article I, section 22 of the Washington Constitution. Plaintiffs do not oppose the County Defendants' motion for judgment "insofar as it relates to claims for injunctive relief"; and to the extent the Third Claim seeks declaratory relief, the claim is barred for the reasons stated above. Finally, as the Court found in its prior Order, ECF No. 41, at 8-12, Plaintiffs may not recover monetary damages for violations of article I, section 22 of the Washington Constitution. *See Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 591 (2001), *review denied*, 146 Wn.2d 1021 (2002) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation." (internal quotation omitted)). Accordingly, Plaintiffs' Third Claim as to the County Defendants also fails as a matter of law.

The County Defendants' motion for judgment on the pleadings is therefore granted with respect to the First, Second, and Third Claims. The Court dismisses these claims as to the County Defendants.[6]

## 2.    Fifth and Seventh Claims

The Fifth and Seventh Claims allege that Alex's Sixth Amendment right to effective assistance of counsel was violated by Defendants

---

[6] Defendants Douglas and Kirsten Anderson did not join the County Defendants' motion or independently move for judgment on these claims. Therefore, the First, Second, and Third Claims remain, but against Defendants Douglas and Kirsten Anderson only.

County Commissioners and Grant County, respectively. Plaintiffs contend that the County Commissioners and Grant County failed to satisfy their constitutional obligation to ensure that Alex received effective assistance of counsel. Conversely, the County Defendants seek dismissal of both claims on the basis that Mr. Anderson was not a "state actor" within the meaning of 42 U.S.C. § 1983. Because § 1983 requires state action as a predicate to liability for constitutional violations, the County Defendants contend that a § 1983 claim cannot lie against them. In response, Plaintiffs assert that Mr. Anderson's status as a state actor is irrelevant because the County Commissioners and Grant County are unquestionably state actors themselves. According to Plaintiffs, the County Commissioners and Grant County had an independent obligation -- separate and apart from Mr. Anderson's obligation -- to ensure Alex received effective assistance of counsel. Alternatively, Plaintiffs contend that Mr. Anderson was a state actor because he acted in an administrative capacity in providing public defense services to Grant County.[7]  *Cf. Miranda v. Clark Cnty.*, 319 F.3d 495 (9th Cir. 2003)

---

[7] Plaintiffs bring their Sixth Claim, also alleging a violation of Alex's Sixth Amendment right to effective assistance of counsel, directly against Mr. Anderson. Thus, to prevail on that claim, Plaintiffs must establish that Mr. Anderson was a state actor when he represented Alex. However, the County Defendants do not seek -- nor do they have standing to seek -- judgment on the Sixth Claim. The question of whether Mr. Anderson was a state actor is not before the Court at this time, and the

(finding that a head of a public defense office qualifies as a state actor based on performance of certain administrative responsibilities).

At the hearing on this motion, Plaintiffs asserted that the Fifth and Seventh Claims are not derivative because those claims are not predicated on Mr. Anderson's liability as a state actor. Instead, Plaintiffs contend that the Fifth and Seventh Claims are predicated solely on the County Commissioners' and Grant County's status as state actors and their independent duty to provide Alex with effective assistance of counsel. Plaintiffs' interpretation of these claims is consistent with the factual and legal allegations pled in the Complaint. *See, e.g.*, ECF No. 2, at 17 ("Defendant County Commissioners acted under color of law, pursuant to their powers and duties as commissioners . . . . [They] deprived Alex Jones of his right to the effective assistance of counsel[.]").

In response, the County Defendants conceded that their motion only seeks to preclude any derivative liability the County Defendants might have based on Mr. Anderson's role as a state actor. The County Defendants further conceded they do not presently seek judgment to the extent these claims are predicated on the County Defendants' independent liability.

Thus, for now, the Court need not confront the question of whether Mr. Anderson was a state actor when he represented Alex. The Court agrees with Plaintiffs' assertion that the Fifth and Seventh Claims seek relief against the County Commissioners and Grant County, respectively,

---

Court therefore declines to address Plaintiffs' argument on this point.

for their independent failure to ensure Alex was provided effective assistance of counsel.   The Court further agrees with Plaintiffs' contention that these claims do not rise or fall with the determination of whether Mr. Anderson was a state actor.   Accordingly, the County Defendants' motion is denied as to the Fifth and Seventh Claims.

**3.   Thirteenth Claim**

The County Defendants also move for judgment on the Thirteenth Claim, by which Mr. and Mrs. Jones seek to recover for the alleged violation of Alex's constitutional rights.   Plaintiffs rely on the following statutory cause of action:

> A mother or father, or both, who has regularly contributed to the support of his or her minor child . . . may maintain or join as a party an action as plaintiff for the injury or death of the child.

RCW 4.24.010. As the Court held in its prior Order, a claim for injury to a child under RCW 4.24.010 is essentially a derivative claim: a parent may maintain such a claim only as long as the child has an independent claim against the same tortfeasor for the same underlying injury. *See* ECF No. 41, at 15.

The County Defendants contend that a claim under RCW 4.24.010 cannot lie where the child's sole "injury" is a constitutional violation.[8]   In

_____

[8] Although the County Defendants originally sought outright dismissal of the Thirteenth Claim, Plaintiffs correctly observe that Alex's common-law tort claims against the County Defendants, including negligent supervision and concerted action claims, may also serve as a predicate for Mr. and Mrs. Jones' injury-to-child claim. Resp. Mem., ECF

support of that argument, the County Defendants rely on a series of cases which hold that § 1983 does not authorize derivative claims by parents based on violations of their child's constitutional rights. *See, e.g.*, *Morgan v. City of New York,* 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001).

The County Defendants' argument, however, misunderstands the nature of Plaintiffs' claim. A parent's § 1983 claim is said to be derivative when the parent brings an action *under § 1983* for their own damages based on a state actor's deprivation of their child's constitutional rights. *See Harry A. v. Duncan*, 351 F. Supp. 2d 1060, 1065-66 (D. Mont. 2005). Here, Plaintiffs do not allege a derivative § 1983 claim because the legal authority for their claim arises not from § 1983, but rather from Washington statute. RCW 4.24.010 creates a state-law cause of action specifically for parents when their child is injured or dies. Further, the measure of damages under RCW 4.24.010 is not limited to the child's injuries; rather, it also includes financial injury to the parent, loss of companionship, and harm to the parent-child relationship. *Cf. Benoy v. Simons*, 66 Wn. App. 56, 64-65, *review denied*, 120 Wn.2d 1014 (1992). (concluding that parents could not recover under RCW 4.24.010 because, *inter alia*, the relationship between the parents and their daughter was impaired before the daughter's alleged injury). The crux of a RCW

No. 40, at 12. The County Defendants have therefore narrowed the scope of their motion and now seek partial judgment on the injury-to-child claim "to the extent [the claim] seeks to recover damages by the parent resulting from [a] constitutional violation or injury to the child[.]" Reply Mem., ECF No. 43, at 10.

4.24.010 claim is not the nature and extent of the child's injury, but rather the harm suffered by the parents as a result of their child's injury. Although the child's injury may be an indispensable predicate to a parent's RCW 4.24.010 claim, the statute provides parents with an explicit right to seek relief for their own injuries.

Nonetheless, whether constitutional violations are cognizable as a child's "injury" within the meaning of RCW 4.24.010 appears to be a novel question of Washington law. Although most, if not all, claims previously brought under this statute appear to be claims by parents seeking recovery for physical injury to or death of their child, the statute does not define "injury" and contains no limitation on what injuries are cognizable. In the absence of a statutory definition of injury, the Court must "give the term its plain and ordinary meaning ascertained from a standard dictionary." *State v. Watson*, 146 Wn.2d 947, 954 (2002). The Court may not "add to or subtract from the clear language of a statute . . . unless the addition or subtraction of language is imperatively required to make the statute rational." *Id.* at 955.

The most recent edition of the Merriam-Webster Online Dictionary defines "injury" as follows: (a) "an act that damages or hurts," (b) a "violation of another's rights for which the law allows an action to recover damages," and (c) "hurt, damage, or loss sustained." Injury - Definition and More, Merriam-Webster.com, *http://www.merriam-webster.com /dictionary/injury* (last visited Oct. 29, 2012). Incorporating the second definition, the statute would permit a parent to recover for any violation of their child's rights for which the law allows an action to recover damages. This definition of injury is logical, and the result

is sound: parents may recover for their own damages or for harm caused to the parent-child relationship, but only as long as the child has a right to recover against that same tortfeasor for the child's underlying injury. Even if the Court relied on the first or third definitions of "injury", the statute would still permit a parent to seek relief for a violation of their child's constitutional rights, provided that the violation caused "hurt" or "damage" to their child.

Children are unquestionably entitled to maintain an action for a violation of their own constitutional rights. *See, e.g.*, *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."). Moreover, it is axiomatic that any constitutional violation causes harm; in fact, in the context of injunctive relief, "irreparable harm is presumed if a violation of the [C]onstitution is shown." *Kaiser v. Cnty. of Sacramento*, 780 F. Supp. 1309, 1311 (E.D. Cal. 1991) (citing *Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984)). Thus, regardless of which dictionary definition of injury is applied to the statute, a constitutional violation can constitute the requisite injury.

If the Washington legislature had intended to limit the scope of injuries cognizable under RCW 4.24.010 to only physical injuries, the legislature was aware of how to do so. *See, e.g.*, RCW 9A.04.110(4)(a) (defining "bodily injury" and "physical injury" as "physical pain or injury, illness, or an impairment of physical condition"). The

1   legislature did not add "bodily," "physical," or any other restrictive
2   modifier before the word "injury" in RCW 4.24.010, and the Court will not
3   graft a restrictive modifier into the statute when the legislature has
4   chosen to omit one.  The Court construes the word "injury" according to
5   its plain meaning and concludes that parents may recover under RCW
6   4.24.010 for a violation of their child's constitutional rights, as long
7   as the child may maintain an action for the same violation.

8        This holding is consistent with the legislative intent of the
9   statute, which is to give parents a right to recover damages when their
10  child is injured or dies.  Laws of 1998, ch. 237, § 1.  Notably, the
11  statute provides for recovery of the harm suffered by the parents as a
12  result of their child's injuries; it does not simply provide duplicative
13  recovery for the child's injuries.  RCW 4.24.010 ("In such an action, in
14  addition to damages for medical, hospital, medication expenses, and loss
15  of services and support, damages may be recovered for the loss of love
16  and companionship of the child and for injury to or destruction of the
17  parent-child relationship[.]").  The Washington legislature chose not to
18  distinguish between physical and constitutional injuries to a child when
19  it enacted this statute, and the Court declines the County Defendants'
20  invitation to hold otherwise.

21       Mr. and Mrs. Jones may seek recovery under RCW 4.24.010 based on any
22  of the alleged injuries to Alex, including any violations of his
23  constitutional rights.  The County Defendants' motion is therefore denied
24  with respect to the Thirteenth Claim.

25                          **IV.  Conclusion**
26

ORDER ~ 18

For the foregoing reasons, the Court finds that 1) Plaintiffs' First, Second, and Third Claims fail as a matter of law because Plaintiffs lack standing to bring claims for equitable relief; 2) Plaintiffs' Third Claim also fails because Plaintiffs may not seek monetary damages for violations of the Washington Constitution; 3) the County Defendants are not entitled to judgment on the Fifth and Seventh Claims, as the County Defendants may be independently liable as state actors, separate and apart from Mr. Anderson, for allegedly failing to provide Alex with effective assistance of counsel; and 4) the County Defendants are not entitled to partial judgment on the Thirteenth Claim because the County Defendants' alleged constitutional violations form a cognizable injury under RCW 4.24.010 for which Mr. and Mrs. Jones may seek redress.

Accordingly, **IT IS HEREBY ORDERED:**

1.   The County Defendants' Motion for Judgment on the Pleadings, **ECF No. 20**, is **GRANTED IN PART** (First, Second, and Third Claims) **AND DENIED IN PART** (Fifth, Seventh, and Thirteenth Claims).

2.   Plaintiffs' First, Second, and Third Claims, as pled in the Complaint, ECF No. 1, are **DISMISSED WITH PREJUDICE** with respect to the County Defendants.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and to distribute copies to counsel.

**DATED** this 31ˢᵗ day of October 2012.

                    S/ Edward F. Shea
                    EDWARD F. SHEA
              Senior United States District Judge

Q:\EFS\Civil\2012\188.mjp.2.1c2.wpd

ORDER ~ 19