UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXANDER N. JONES; KEN JONES; and JO ANNE JONES, <br><br> Plaintiffs, <br><br> v. <br><br> GRANT COUNTY, WASHINGTON; LEROY C. ALLISON and BENAYA ALLISON, his wife; TIM SNEAD and "JANE DOE" SNEAD, his wife; DEBORAH KAY MOORE and DOUG MOORE, her husband; and DOUGLAS G. ANDERSON and KIRSTEN H. ANDERSON, his wife, <br><br> Defendants. | No.  CV-12-0188-EFS <br><br> **ORDER DENYING PLAINTIFFS' MOTIONS TO EXCLUDE AND FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion to Exclude Richard Alldredge, ECF No. 106, Plaintiffs' Motion for Summary Judgment Re: Collateral Estoppel, ECF No. 108, and Defendants' Motion for Summary Judgment, ECF No. 111.  Plaintiffs Alexander, Ken, and Jo Anne Jones seek to exclude Defendants' statistician Richard Alldredge and ask the Court give preclusive effect to the Washington Supreme Court decision in *State v. ANJ*, 225 P.3d 956 (2010).  Defendants Leroy Allison, Tim Snead, Deborah Kay More (the "County Commissioners"), their respective spouses, and Grant County (collectively, the "County Defendants") seek summary judgment on all of Plaintiffs remaining

1   claims.   To date, Defendants Douglas Anderson and Kirsten Anderson
2   have not joined the County Defendants' motion or filed their own
3   dispositive motion.   On February 4, 2014, the Court heard from the
4   parties and reserved ruling on the pending motions.

5       The Court, having reviewed the pleadings, legal authority, and
6   the arguments of counsel, is fully informed.   For the reasons set
7   forth below, the Court denies Plaintiffs' Motion to Exclude, denies
8   Plaintiffs' Motion for Summary Judgment, and grants in part and denies
9   in part County Defendants' Motion for Summary Judgment.

10                      **II.   <u>BACKGROUND</u>**
11  **A.   Factual History[1]**

12      On July 2, 2004, at twelve years of age, Plaintiff Alex Jones --
13  the son of Plaintiffs Ken and Jo Anne Jones -- was charged with First
14  Degree Child Molestation in the Juvenile Division of Grant County
15  Superior Court.[2]   Grant County public defender Douglas Anderson, an
16  independent contractor, was appointed to represent Alex.   Mr. Anderson
17  had been under contract with Grant County to provide legal defense
18  services in the Juvenile Division of Grant County Superior Court since
19  December 2000.   Pursuant to that contract, he was appointed by judges
20  of the Grant County Superior Court to represent minor defendants who
21  could not afford to hire their own attorney.

22  _____

23  [1] In ruling on the motion for summary judgment, the Court has considered the
    facts and all reasonable inferences therefrom as contained in the submitted
24  affidavits, declarations, exhibits, and depositions, in the light most
    favorable to the party opposing the motion.   *See Leslie v. Grupo ICA*, 198
25  F.3d 1152, 1158 (9th Cir. 1999).
    [2] Because all three Plaintiffs share a common surname (Jones), to avoid
26  confusion, the Court refers to Plaintiffs Ken and Jo Anne Jones as Mr. and
    Mrs. Jones, respectively, and to Plaintiff Alexander Jones as Alex, which is
    the given name he uses in the Complaint.   The Court intends no disrespect.

The Board of County Commissioners is the primary legislative and executive authority for the county, with the authority and responsibility to make and enforce all laws within the county. ECF No. 136. Grant County passed two Resolutions 92-115-C and 97-29-CC to set forth the standards for the delivery of legal services to indigent juveniles.

Mr. Anderson represented Alex throughout the September 15, 2004 pretrial conference and entry of a guilty plea to the reduced charge of Second Degree Child Molestation. After entering a guilty plea on September 22, 2004, Alex hired a new lawyer in November 2004 and within five weeks moved to withdraw his guilty plea. After the Superior Court denied Alex's motion to withdraw his plea, he appealed. The Washington Supreme Court in *State v. ANJ*, 168 Wash.2d 91 (2010) reversed the Superior Court decision finding that Mr. Johnson had rendered deficient assistance by failing to conduct an investigation before proceeding to a guilty plea, and permitted Alex to withdraw his plea based upon a finding the plea was involuntary due to misinformation about the impact of a juvenile sex conviction.

**B.   Procedural History**

Plaintiffs filed this action in Chelan County Superior Court on March 5, 2012, alleging claims against the State of Washington and Governor Christine O. Gregoire (collectively, the "State Defendants"), the County Defendants, and Douglas and Kirsten Anderson, ECF No. 2, at 7-21. The Complaint asserts the following claims for relief:

ORDER – 3

(a)  two claims against all Defendants for declaratory judgment, pursuant to RCW 7.24.010 and 7.24.050 (First and Second Claims);

(b)  a claim against all Defendants for violating Mr. Jones's rights under Article I, section 22 of the Washington Constitution (Third Claim);

(c)  one claim each against Defendants Gregoire, the County Commissioners, Douglas Anderson, and Grant County, pursuant to 42 U.S.C. § 1983, for violating Mr. Jones's Sixth Amendment right to effective assistance of counsel (Fourth, Fifth, Sixth, and Seventh Claims, respectively);

(d)  two additional claims against Defendant Douglas Anderson, one for professional negligence (Eighth Claim), and one for breach of fiduciary duty (Ninth Claim);

(e)  one claim against Defendants Grant County and the County Commissioners for negligent hiring, supervision, and retention (Tenth Claim);

(f)  one claim against the County Commissioners and Defendant Douglas Anderson for "concerted action," or civil conspiracy (Eleventh Claim);

(g)  one claim against the spouses of the County Commissioners for community liability (Twelfth Claim); and

(h)  one claim against all Defendants for injury to child, pursuant to RCW 4.24.010 (Thirteenth Claim).

Defendants removed the case to this Court on May 4, 2012.  ECF No. 1.

//

ORDER – 4

On June 26, 2012, the State Defendants moved for judgment on the pleadings. ECF No. 17. On August 8, 2012, the Court granted the State Defendants' motion and dismissed all claims against the State Defendants. ECF Nos. 41 & 45 at 7 n.5. On July 10, 2012, the County Defendants also moved for judgment on the pleadings. ECF No. 20. On October 31, 2012, the Court denied the County Defendants' motion as to Plaintiffs' Fifth, Seventh, and Thirteenth Claims, but granted the motion as to Plaintiffs' First, Second, and Third Claims. ECF No. 45. Accordingly, Plaintiffs' First, Second, and Third Claims were dismissed as to the County Defendants. ECF No. 45. However, Plaintiffs' First, Second, and Third Claims remained as to Defendants Douglas and Kirsten Anderson. ECF No. 45 at 11 n.6. On April 8, 2013, Plaintiffs filed an Amended Complaint, which listed the First, Second, and Third Claim as "[a]gainst all defendants" and as "dismissed per ECF No. 41 & 45." ECF No. 85 at 10. The Amended Complaint also withdrew Plaintiffs' Eight, Ninth, and Tenth Claims. ECF No. 85 at 13-14. Based upon the Courts' previous Orders and the parties' Notice of To-Be-Adjudicated Claims, remaining before this Court is Plaintiffs' Fifth, Sixth, Seventh, Eleventh, Twelfth, and Thirteenth Claims.

### III.  PLAINTIFFS' MOTION TO EXCLUDE

**A.  Legal Standard**

An expert witness may testify at trial if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness must be "qualified as an expert by knowledge, skill,

experience, training, or education" and may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.; see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999). The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). "Concerning the reliability of non-scientific testimony . . . the Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted). In such cases, the Court's gatekeeping role under *Daubert* involves probing the expert's knowledge and experience. *See id*. at 1018. "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted). "If the reviewing court decides the record is sufficient to determine whether expert testimony is relevant and reliable, it may make such findings. If it 'determines that evidence [would be inadmissible] at trial and that the remaining, properly admitted evidence is insufficient to constitute a submissible case[,]' the reviewing court

may direct entry of judgment as a matter of law." *Estate of Barabin v. AstenJohnson, Inc.*, 10-36142, 2014 WL 129884 (9th Cir. Jan. 15, 2014) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 446-47 (2000)) (alternation in original).

**B.    Analysis**

Plaintiffs seek to exclude any testimony or evidence from Defendants' expert statistician, Richard Alldredge.  Mr. Alldredge is offered in response to Plaintiffs' own expert statistician Mel Ott. Plaintiffs do not challenge Alldredge's qualifications, nor do they dispute that he relied upon sufficient data and used reliable methods. Both experts, Mr. Ott and Mr. Alldredge used the same data source and the same odds ratio analysis, Chi-Square Test, and Fisher's Exact Test.  The sole distinction between the two experts analysis is the grouping of data for inclusion in their odds ratio analyses and the opinions each reached based upon that analysis.  Plaintiffs assert that the selecting or grouping of data conducted by Mr. Alldredge render his application in this case unreliable.

Here, the data and statistical methodology are uncontested. Truly at issue is the meaning of different data points and the reasoning for why certain data sets should be compared.  The reasoning for why different data sets were compared and its impact upon the expert's opinion goes to the weight and credibility of those opinions rather than their admissibility. *See Bazemore v. Friday*, 478 U.S. 385, 401 (1986) (Overturning the lower courts finding that the regression analyses offered to prove discrimination were unacceptable because they did not include all measurable variables, the Court

1  stated that "[n]ormally, failure to include variables will affect the

2  analysis' probativeness, not its admissibility."). Here, the dispute

3  goes to which data sets to use, which goes to probativeness not

4  reliability.  The explanation by both experts as to why they choose

5  their respective data sets to compare and the means they place behind

6  those results will aid the jury in better understanding the issues in

7  this case.  Ultimately, it is a question for the jury to decide which

8  approach is more credible.  Accordingly, Plaintiffs' Motion to Exclude

9  is denied.

10  **IV.  <u>MOTIONS FOR SUMMARY JUDGMENT</u>**

11      Both parties have filed a motion for summary judgment.

12  Plaintiffs ask that the state court's decision in *State v. ANJ*, 225

13  P.3d 956 (2010) be given "collateral estoppel effect" against all

14  Defendants.  ECF No. 108.  The County Defendants seek summary judgment

15  as to all of Plaintiffs' remaining claims as to the County and the

16  County Commissioners.

17  **A.  Legal Standard**

18      Summary judgment is appropriate if the "movant shows that there

19  is no genuine dispute as to any material fact and the movant is

20  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

21  Once a party has moved for summary judgment, the opposing party must

22  point to specific facts establishing that there is a genuine dispute

23  for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If

24  the nonmoving party fails to make such a showing for any of the

25  elements essential to its case for which it bears the burden of proof,

26  the trial court should grant the summary judgment motion.  *Id.* at 322.

1   "When the moving party has carried its burden under Rule [56(a)], its

2   opponent must do more than simply show that there is some metaphysical

3   doubt as to the material facts. . . . [T]he nonmoving party must come

4   forward with 'specific facts showing that there is a genuine issue for

5   trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

6   574, 586-87 (1986) (internal citation omitted) (emphasis in original).

7   When considering a motion for summary judgment, the Court does not

8   weigh the evidence or assess credibility; instead, "the evidence of

9   the non-movant is to be believed, and all justifiable inferences are

10  to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11  242, 255 (1986).

12  **B.   Plaintiffs' Motion for Summary Judgment Re: Collateral Estoppel**

13       Plaintiffs seek to have the Washington Supreme Court's decision

14  in *State v. ANJ*, 225 P.3d 956 (2010) given "collateral estoppel

15  effect" against all Defendants.   ECF No. 108.   Specifically,

16  Plaintiffs seek a ruling that "Doug Anderson rendered ineffective

17  assistance of counsel, and deprived Alex Jones of his rights under the

18  Sixth Amendment" by 1) "failing to adequately investigate the charges

19  against Alex Jones," 2) "failing to establish a confidential

20  relationship with Alex Jones, independent of his parents," 3)

21  "misinforming Alex Jones regarding the consequences of a guilty plea,"

22  and 4) "failing to ensure that Alex Jones understood the nature of the

23  charges against him," and that the "public defense contract between

24  Grant County and Doug Anderson was a cause of the foregoing

25  ineffective assistance of counsel . . . violations." ECF No. 108 at

26  2.

1.  <u>Collateral Estoppel</u>

A federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law. *McInnes v. California*, 943 F.2d 1088, 1092-93 (9th Cir. 1991). *See also W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1525 (9th Cir. 1990) ("[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.") Accordingly, the Court looks to Washington's law of issue preclusion.

Under Washington law, issue preclusion or collateral estoppel requires the party seeking preclusion to establish that:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 152 Wn.2d 299, 307 (2004). Collateral estoppel may be applied to preclude only issues that were litigated and finally determined in the earlier proceeding, and the party against whom it is asserted must have had a full and fair opportunity to litigate the issue. *Id.* at 306. "The proponent must provide the reviewing court with a sufficient record of the prior litigation to facilitate such analysis." *State v. Barnes*, 932 P.2d 669, 678 (Wash.App. Div. 2 1997) (citing *Beagles v. Seattle-First Nat'l Bank*, 25 Wash. App. 925, 932 (1995). "Where it is not clear whether an issue was actually litigated, or if the judgment is

1    ambiguous or indefinite, application of collateral estoppel is not

2    proper." *Id.* (citing *Mead v. Park Place Properties*, 37 Wash. App.

3    403, 407 (1984).

4        2.  Analysis

5        Plaintiffs seek collateral estoppel against two separate groups

6    of Defendants, the County Defendants and the Anderson Defendants.

7    Accordingly, the Court evaluates each group in turn.

8            a.  *County Defendants*

9        Plaintiffs seek collateral estoppel claiming the issue of

10   whether the contract was a cause of the ineffective assistance of

11   counsel violations was fully litigated in the Washington State Supreme

12   Court.    However, it is not clear that this issue was directly

13   litigated and finally decided by the Supreme Court.    While the opinion

14   states, "A.N.J. also argues the Grant County public defender contract

15   in place at the time created an incentive for attorneys not to

16   investigate their clients' cases or hire experts.    We agree," the

17   opinion does not state the Court held that the contract between Grant

18   County and Anderson actually caused ineffective assistance. *ANJ*, 225

19   P.3d at 966.    To the contrary, the Court limits its holding stating

20   "[h]owever, we hold that if a public defender contract requires the

21   defender to pay investigative, expert, and conflict counsel fees out

22   of the defender's fee, the contract *may be considered as evidence* of

23   ineffective assistance of counsel." *Id.* at 967 (emphasis added).

24   Accordingly, as to the issue of the contract causing a violation, it

25   is not clear that the issue was fully and fairly litigated below or

26   that it was reached on the merits.    Accordingly, as the first and

second factors work against a finding of collateral estoppel as to the County Defendants, the Court denies Plaintiffs motion as to the County Defendants.

b.    *Anderson Defendants*

Anderson was not a party to the state court criminal proceeding and was not a party as the case was appealed.  Accordingly, in order for collateral estoppel to apply, Anderson would have to be in privity with a party.  Plaintiffs argue that privity is met because Anderson was a witness in the underlying criminal case.  Plaintiffs cite to the passage in *World Wide Video of Washington, Inc. v. City of Spokane*, 125 Wash. App. 289, 306 (2005), that "[o]ne who was a witness in an action, fully acquainted with its character and object and interested in its results, is estopped by the judgment as fully as if he had been a party."  However, Plaintiffs fail to include in their brief the subsequent sentence which states, "[i]f this interested witness could have intervened but chose not to for tactical reasons, he or she suffers no injustice from application of collateral estoppel."  *Id.* (citing *Garcia v. Wilson*, 820 P.2d 964, 966-67 (1991); *Hackler v. Hackler*, 37 Wash. App. 791, 795 (1984).

Here, while Anderson was a witness in the criminal proceeding, testifying to assist his former client to withdraw his guilty plea, there was no opportunity for Anderson to intervene in the action and no evidence of some manipulation or tactical maneuvering on his part. To the contrary, the Washington Supreme Court noted that:

> [W]e do not mean to suggest any particular ethical violation on [Anderson's] part.  The record suggests Anderson believed he acted in the best interest of his

1    client which is evidence by his willingness to sign a
2    declaration detailing his inadequate performance in support
     of A.N.J.'s motion to withdraw his plea.

3    *ANJ*, 225 P.3d at 970 n.18.  Accordingly, the Court finds application

4    of collateral estoppel as to the Anderson Defendants would work an

5    injustice upon Defendant Anderson.

6        For the foregoing reasons, the Court denies Plaintiffs' Motion

7    for Summary Judgment regarding collateral estoppel.

8    **C.    Grant County Defendants' Motion for Summary Judgment**

9        County Defendants move for summary judgment asserting that

10   *Monell* liability cannot be demonstrated a matter of law, that the

11   Commissioners are entitled to either absolute-legislative immunity or

12   qualified immunity, that the community liability claims have no basis

13   in law, and that the state law derivative claim under RCW 4.24.010

14   does not state a cognizable claim.

15       1.    Community Liability

16       Plaintiffs' Twelfth Claim asserts community liability against

17   the County Commissioners' spouses.  Defendants argue this claim has no

18   basis in law.  ECF No. 111.  In response, Plaintiffs withdraw this

19   claim as to the spouses of the County Commissioners.  ECF No. 125 at 2

20   n.1.  Accordingly, the Court grants Defendants' motion as to community

21   liability, dismissing Plaintiffs' Twelves Claim as to the County

22   Defendants only.

23       2.    Grant County

24       Defendants argue that the County cannot be liable under Section

25   1983 absent proof of a policy or custom that amounts to deliberate

26

ORDER – 13

1    indifference to Sixth Amendment rights and a showing that the policy

2    or custom was the moving force behind the claimed violations.

3      Section 1983 imposes two essential proof requirements upon a

4    claimant: (1) that a person acting under color of state law committed

5    the conduct at issue, and (2) that the conduct deprived the claimant

6    of some right, privilege, or immunity protected by the Constitution or

7    laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535

8    (1981). A person deprives another "of a constitutional right, within

9    the meaning of section 1983, if he does an affirmative act,

10   participates in another's affirmative acts, or omits to perform an act

11   which he is legally required to do that causes the deprivation of

12   which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743

13   (9th Cir. 1978). The inquiry into causation must be individualized

14   and focus on the duties and responsibilities of each individual

15   defendant whose acts or omissions are alleged to have caused a

16   constitutional deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 370-71

17   (1976). Liability for a violation will not arise from *respondeat*

18   *superior* liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

19   690-92 (1978). A causal link between a person holding a supervisory

20   position and the claimed constitutional violation must be shown; vague

21   and conclusory allegations are insufficient. *See Fayle v. Stapley*,

22   607 F.2d 858, 862 (9th Cir. 1979); *Ivey v. Bd. of Regents*, 673 F.2d

23   266, 268 (9th Cir. 1982).

24     A government entity may not be held liable under 42 U.S.C. §

25   1983, unless a policy, practice, or custom of the entity can be shown

26   to be a moving force behind a violation of constitutional rights.

1   *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658,

2   694 (1978).  In order to establish liability for governmental entities

3   under *Monell*, a plaintiff must prove "(1) that [the plaintiff]

4   possessed a constitutional right of which [s]he was deprived; (2) that

5   the municipality had a policy; (3) that this policy amounts to

6   deliberate indifference to the plaintiff's constitutional right; and,

7   (4) that the policy is the moving force behind the constitutional

8   violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d

9   432, 438 (9th Cir. 1997) (internal quotation marks and citation

10  omitted; alterations in original).

11      Here, Alex had a constitutional right to effective assistance of

12  counsel, and taking the County Regulations and the Contract most

13  favorably to Plaintiff, the County had a policy of providing indigent

14  defense through the type of contract at issue.  Accordingly, the

15  parties dispute whether the policy was deliberately indifferent or the

16  moving force behind the violation.

17      Deliberate indifference occurs "when the need for more or

18  different action 'is so obvious, and the inadequacy [of the current

19  procedure] so likely to result in the violation of constitutional

20  rights, that the policymakers . . . can reasonably be said to have

21  been deliberately indifferent to the need.'" *Oviatt By & Through*

22  *Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992) (quoting *City of*

23  *Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)).

24      County Defendants maintain that the terms of the contract

25  combined with the fact that these contract terms were not prohibited

26  by the Rules of Professional Conduct until 2008, four years after the

1  representation of Alex, that it is impossible for Plaintiffs to

2  demonstrate deliberate indifference on the part of the county.

3  Plaintiffs maintain that the WDA Standards, the Board of County

4  Commissioners Committee recommendations, the ACLU Report, the WSBA

5  Report, the *Seattle Times* series, and the *Best* lawsuit should have

6  alerted the County that its policy was inadequate for providing

7  effective indigent defense.  The Court having reviewed this evidence

8  finds that there is a genuine dispute of material facts as to whether

9  the County was deliberately indifferent to the plaintiff's

10 constitutional right or was the moving force behind the violation.

11 Accordingly, this is a matter best left for resolution by the jury.

12 Defendant's motion as to the County's liability is denied.

13      3.   County Commissioners

14      Defendants argue the County Commissioners are entitled to either

15 absolute immunity or qualified immunity.

16           a.   *Absolute Immunity*

17      Defendants argue the County Commissioners are entitled to

18 absolute immunity as they were engaged in legislative acts.

19 Legislators "are absolutely immune from liability under § 1983 for

20 their legislative acts." *Kaahumanu v. County of Maui*, 315 F.3d 1215,

21 1219 (9th Cir. 2003).  There are four factors to apply in deciding

22 whether an act is legislative, "(1) whether the act involves *ad hoc*

23 decision making, or the formulation of policy; (2) whether the act

24 applies to a few individuals, or the public at large; (3) whether the

25 act is formally legislative in character; and (4) whether it bears all

26 the hallmarks of traditional legislation." *Id.* at 1220.

Here, the Court finds this was not a traditional legislative act. While the policies setting forth the standards for the delivery of legal services to indigent juveniles were set forth in two passed resolutions, 92-115-C and 97-29-CC, the matter at issue is the contract with Anderson. The contract between Commissioners and Anderson carried out the policy embodied in the County resolutions but did not formulate a policy, and was in the form of a contract rather than an ordinance, resolution, or legislation. Additionally, administering contracts is generally an executive function. *See Community House, Inc. v. City of Boise*, 623 F.3d 945, 960 (9th Cir. 2010) (recognizing that "monitoring or administering a municipal contract is generally an executive function."). Accordingly, the County Commissioners were not engaged in a legislative act and therefore do not enjoy the protection of absolute immunity.

> b.  *Qualified Immunity*

Defendants argue the County Commissioners, in their individual capacity, are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established state or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Staton v. Sims*, 134 S.Ct. 3, 5 (2013) ("existing precedent must have placed the statutory or constitutional question beyond debate").

Here, in 2000 when the County Commissioners entered into the contract with Anderson that is at issue, and in 2004 when Alex was

1    represented by Anderson, it was not clearly established that
2    maintaining such a system of public defense would violate a person's
3    Sixth Amendment rights.    While, as discussed earlier, there is a
4    material issue of whether the County acted with deliberate
5    indifference due to numerous reports and recommendations available to
6    the County, the question of qualified immunity requires the question
7    be beyond debate.  *See also Estate of Ford v. Ramirez-Palmer*, 301 F.3d
8    1043, 1048-1050 (9th Cir. 2002) (recognizing the inquiry into
9    deliberate indifference and qualified immunity are separate).  It was
10   not until September 2008 that the Rules of Professional Conduct were
11   amended to prohibit the types of contracts entered into with Anderson.
12   Even in 2010, the Washington Supreme Court specifically refused to
13   hold that such contracts violates a constitutional right, instead only
14   finding that "the contract may be considered as evidence of
15   ineffective assistance of counsel." *ANJ*, 168 Wash. 2d. at 111-112.
16   While Plaintiffs cite to the decision in *Miranda v. Clark County*, 319
17   F.3d 465 (9th Cir. 2003), finding the improper allocation of public
18   defense resources constitutes a deprivation of the Sixth Amendment
19   right to effective assistance of counsel, *Miranda* does not put the
20   County Commissioners on notice that the constitutional question at
21   issue was beyond debate.  Accordingly, the Commissioners are entitled
22   to qualified immunity.

23       For the foregoing reasons, Defendants' motion is granted as to
24   qualified immunity and denied as to absolute immunity and *Monell*
25   liability.  Because Plaintiffs' Fifth Claim is therefore dismissed
26   against the County Commissioners, the related Eleventh Claim for

concerted action and the derivative Thirteenth Claim for injury to a child, cannot be maintained.

### V.   CONCLUSION

Based upon the forgoing findings, remaining for trial are 1) Plaintiff's Sixth, Eleventh, Twelfth, and Thirteenth Claims against the Anderson Defendants, and 2) Plaintiff's Seventh and Thirteenth Claims against Grant County.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Exclude, **ECF No. 106**, is **DENIED.**

2. Plaintiffs' Motion for Summary Judgment, **ECF No. 108**, is **DENIED.**

3. Defendants' Motion for Summary Judgment, **ECF No. 111**, is **GRANTED IN PART** (community liability; qualified immunity) and **DENIED IN PART** (remainder).

4. Plaintiffs' Twelfth Claim is dismissed as to County Defendants only.

5. Plaintiff's Fifth, Eleventh, and Thirteenth Claims are dismissed as to the County Commissioners.

6. The case caption is to be **AMENDED** as follows:

ALEXANDER N. JONES; KEN JONES; and JO ANNE JONES,

   Plaintiffs,

   v.

GRANT COUNTY, WASHINGTON; and DOUGLAS G. ANDERSON and KIRSTEN H. ANDERSON, his wife,

   Defendants.

//

1          **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this

2    Order and provide copies to all counsel.

3          **DATED** this   27th   day of May 2014.

4

5                              s/Edward F. Shea
                              EDWARD F. SHEA
6                     Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26